W. C. SCHULTZ and C. H. Schultz, Copartners Doing Business as Schultz Brothers, Respondents, v. E. M. TRUAX et al., Defendants. E. M. TRUAX, Appellant.

(205 N. W. 236.)

**Contracts — contractors held entitled to compensation in instant case.**

1. This is an action to recover upon a contract for stripping lignite coal and mining and loading the coal uncovered. The contract provided that the plaintiffs should be paid a stipulated sum "for each yard of dirt stripped." In making the excavation the plaintiffs constructed a pit with sloping walls. For reasons, stated in the opinion, it is *held*, that the plaintiffs are entitled to compensation, according to the terms of the contract, for the dirt removed in the slopes.

**Contracts — nonperformance of contract is excused, if performance is prevented by conduct of adverse party.**

2. Nonperformance of a contract in accordance with its terms is excused if performance is prevented by the conduct of the adverse party.

Opinion filed September 15, 1925.

Building Contracts, 9 C. J. § 78 p. 739 n. 23. Contracts, 13 C. J. § 528 p. 563 n. 63, 67; § 585 p. 584 n. 3; § 586 p. 585 n. 8; § 721 p. 647 n. 23, 24; § 786 p. 690 n. 84.

From a judgment of the District Court of Ward County, *Lowe, J.,* defendant, Truax, appeals.

Modified and affirmed.

*McGee & Goss,* and *Divet, Holt, Frame & Thorp,* for appellant.

A contract in writing may be altered by a contract in writing, or by an executed oral agreement, and not otherwise. Comp. Laws, 1913, § 5938; J. I. Case Co. v. Loomis, 153 N. W. 479; Wynn v. Coonan, 153 N. W. 980.

Whenever an account stated is thrust forward, in whatever form of action it is pleaded, it may be impeached. Gutschall v. Cooper, 86 Pac. 125.

Note.— (2) Act or omission of adverse party as excusing nonperformance of contract, see 6 R. C. L. 1012; 2 R. C. L. Supp. 265; 4 R. C. L. Supp. 457; 5 R. C. L. Supp. 385.

An account stated may be opened on the ground of fraud, mistake, error, omission, or undue advantage, but that the burden rests upon the party seeking to open it. Montgomery v. Fritz, 7 N. D. 348; Lay v. Emery, 8 N. D. 515.

If certain facts are assumed by both parties as the basis for a contract, and it subsequently appears that such facts did not exist, the contract is inoperative. Fink v. Smith, 170 Pa. 124.

Where certain facts assumed by both parties are the basis of a contract, and it subsequently appears that such facts did not exist, there is no agreement. 13 C. J. 377, and cases cited.

Where the owner rescinds the contract before any work is done under it, the contractor's remedy is confined to his action for breach of contract. He cannot furnish work and material after the rescission and claim therefor. Boissot, Mechanics' Liens, chap. 5, p. 70.

A subcontractor can acquire no lien to secure unliquidated damages due to the contractor on account of a violation of the contract on the part of the owner. Miner v. Hoyt, 4 Hill (N. Y.) 93; Hoyt v. Minor, 7 Hill (N. Y.) 525.

Where there is no contract there can be no lien, and that an action to foreclose a lien not founded upon a subsisting contract cannot be maintained. Bovey-Schute Lbr. Co. v. Iverson, 32 N. D. 10.

The lien must depend upon and must follow, the contract. Stoltze v. Hurd, 20 N. D. 412.

To justify a recovery upon a contract as substantially performed, the omissions or deviations must be the result of mistake or inadvertence, and not intentional, much less fraudulent, and they must be slight or susceptible of remedy so that an allowance out of the contract price will give the other party substantially what he contracted for. Elliott v. Caldwell, 48 N. W. 845.

The mere fact of making certain payments and taking possession of and occupying the building, does not of itself amount to such waiver, or estop defendants from urging nonperformance of the contract on plaintiffs' part. Merchand v. Perrin, 19 N. D. 494.

*Fisk, Murphy & Nash,* for respondents.

Whether the contract is entire or severable, depends in general upon the consideration to be paid, and not upon the subject. If the consideration is single, the contract is entire; but if the consideration is ex-

pressly or by implication apportioned, the contract is severable. Nichols & Shepherd v. Charlobois, 10 N. D. 450.

But the question in every case is whether such intention is expressed in the contract, and where such intention would seem contrary to the equity of the case, courts ought to require that it be clearly and precisely expressed before they enforce it. Leonard v. Dyer, 68 Am. Dec. 382.

CHRISTIANSON, Ch. J.   Plaintiffs brought this action to recover from the defendant E. M. Truax the sum of $17,335.78, and interest, claimed to be due them for uncovering lignite coal and excavating the coal so uncovered and loading it upon cars; and to foreclose a miner's lien filed by the plaintiffs against the land where the dirt was excavated and the coal mined.   This land is located in Burke county, North Dakota, and was, and is, owned by the defendant John Greenup, who had entered into a contract with the defendant Truax, whereby the defendant Truax agreed to uncover, mine, ship and sell for said Greenup coal located on the land against which the said miner's lien is filed. The defendants George Keup and Fred Keup had a mortgage on this real estate and were made parties defendant for that reason; but they did not appear or defend in the action.   The case was tried to the court without a jury.   The trial court made findings of fact and conclusions of law in favor of plaintiffs, and the defendant E. M. Truax has appealed from the judgment and demanded a trial anew in this court.

In 1920 the defendant John Greenup was the owner of the SE¼ of section 20, township 162, range 93, in Burke county, North Dakota. This tract was underlaid with lignite coal and Greenup entered into a contract with the defendant Truax to uncover, mine, ship and sell this coal for him.   The contract between Greenup and Truax is not in any way involved in this controversy.   Greenup recommended to Truax the plaintiffs Schultz Brothers as suitable persons to employ to uncover and mine the coal in question.   Truax entered into negotiations with Schultz Brothers and three different meetings were had in which the matter in question was discussed with the result that on or about March 15th, 1920, the plaintiffs and the defendant Truax entered into the following written contract:

"THIS CONTRACT AND AGREEMENT, made and entered into by and between E. M. Truax, of Columbus, Burke county, North Dakota, party of the first part, and W. G. Schultz, and C. H. Schultz, hereinafter known as Schultz Bros., of Bowbells, Burke county, North Dakota, parties of the second part:

WITNESSETH: That the party of the first part has contracted and agreed to employ the said Schultz Bros., to strip and move dirt for the purpose of uncovering coal on the southeast quarter (SE¼) of section twenty (20), in township one hundred sixty-two (162), North of range ninety-three (93), West of the fifth principal meridian, North Dakota, during the season of 1920, and further employs them to load the coal so uncovered on board cars on such terms and conditions as they may hereinafter stipulate.

And the said Schultz Bros., do hereby contract and agree and accept the work of stripping and uncovering coal and loading the same on board cars for the said E. M. Truax, during the season of 1920, on such terms and conditions as may hereinafter be set out.

Schultz Bros., are to commence work stripping said coal just as soon as the ground is in such condition that the work can be started this spring. They are to furnish all their own machinery, and supplies, and provide for all help. When Schultz Bros., begin loading the coal, Truax agrees to furnish all loading equipment necessary to load the coal, but Schultz Bros., shall do all the work. By loading equipment, is meant a loading tipple for loading railroad cars, together with motive power to operate the same.

It is hereby contracted and agreed that Schultz Bros., shall strip and uncover not less than fifty thousand tons of coal on or before October 1st, 1920, and the maximum number of tons to be stripped and uncovered under this contract shall be seventy thousand (70,000) tons.

Truax agrees to pay to Schultz Bros., Forty-two (.42) cents per yard for each yard of dirt stripped at such time, and under such conditions as hereinafter set out. And he further agrees to pay them fifty-five (.55) cents per ton for each ton of coal loaded on board railroad cars, payment to be made at such time and in such manner as may hereinafter be set out.

Truax agrees to pay to Schultz Bros., not to exceed Seven Thousand ($7,000) Dollars in any one month figured from the day actual work

begins, this money shall be used to pay labor, feed and such other incidental expenses necessary to keep the crew at work at all times. If this amount is not required to defray expenses above mentioned, then the payment shall be proportionately smaller.

Truax agrees to buy a steam shovel to be used by the Schultz Bros., for moving coal. This shovel is to remain the property of E. M. Truax at all times until it has been fully paid for, but Schultz Bros., shall keep it in repair while in their use without expense to Truax. This shovel shall be paid for by the Schultz Bros., by applying twenty (20) per cent deduction of all gross earnings as payment on the steam shovel, the balance due Schultz Bros., shall be paid them as fast as they load the coal on board the railroad cars, eighty (80) per cent of the value of the coal to be applied every two weeks until the entire amount due them shall have been paid. If they are able to pay up the shovel in full, then the entire value of the coal shall be paid them at intervals of two weeks from the time they begin loading coal, until fully paid.

Schultz Bros., shall furnish a ten thousand dollar ($10,000) Surety Bond as an evidence of good faith in carrying out this contract and the due performance of the same.

IN WITNESS WHEREOF the parties hereto have interchangeably set their hands and seals this 15th day of March, 1920.

Signed, Sealed and Delivered in the presence of:

George Keup,                                          E. M. Truax,
F. A. King,                                           W. G. Schultz,
                                                      C. H. Schultz."

The plaintiffs entered upon their work in accordance with the terms of the contract, and during the spring and summer of 1920 removed in all some 154,156.2 square yards of dirt, thereby stripping some 50,000 tons of lignite coal. The plaintiffs did not receive the steam shovel referred to in the contract until the latter part of September at which time the excavation work had been practically completed. The vein of coal involved in this controversy was from ten to twelve feet thick and was overlaid with a layer of dirt in some instances twenty feet in depth. In removing the dirt the sides of the pit were constructed with slopes, that is, the sides of the pit were sloping instead of vertical and the principal question in controversy in this case is whether under the

contract the plaintiffs are entitled to compensation for the dirt removed in these slopes. The plaintiffs contend that they are entitled to compensation for all the dirt removed, at the price stipulated in the contract. The defendant, Truax, on the other hand, contends that under the contract the plaintiffs are not entitled to compensation for any of the dirt removed in the slopes. That is, Truax contends that the plaintiffs are not entitled to compensation for any dirt stripped outside of perpendicular lines above the edge of the exposed coal.

Much evidence was adduced on the question whether in stripping coal in that locality it was customary to make an excavation with sloping or vertical walls; also, whether in stripping the coal in question here, the conditions of the soil, the depth of the pit, etc., were such as to render it necessary to construct a pit with sloping walls. On these questions there was a square conflict in the evidence. No good purpose would be subserved by entering into a lengthy discussion of the evidence and it would extend this opinion beyond all reasonable limits to do so. The trial judge, in accordance with an agreement of the parties, made a personal inspection of the mine in controversy as well as of the other mines in that immediate vicinity, which had been referred to in the testimony, and after such inspection, and a consideration of all the evidence adduced, the trial court expressed it to be his opinion that "all the dirt removed by the plaintiffs was done for the purpose of uncovering the coal and came within the contract." And while we do not have the benefit of the information which the trial court had, by virtue of his personal inspection, we are of the opinion that his conclusions are in accord with the evidence as contained in the record. According to the evidence the plaintiffs, Schultz Brothers, for a number of years prior to 1920 had been engaged in the construction of highways, railways and projects of that kind, requiring the excavation and removal of dirt; but they had never before either stripped or mined coal. They had an outfit adapted for the sort of work in which they had been engaged. That is, they had, horses, scrapers, graders and dump wagons, etc., but they had no steam shovel. The defendant, Truax, himself testified that the plaintiffs were "dirt men," and that at the time the contract was made he had no doubt as to their ability to make the necessary excavation and strip the coal, but that he did have

some doubt as to their ability to handle the mining and loading of the coal.

Many cases have been cited by the appellant relating to the right of a contractor to be compensated for slopes under a contract requiring him to make a certain excavation. In our opinion not any of these cases are of any force here as they all relate to excavations wherein no benefit would be derived from the construction of the slopes except by the contractor. That is, they relate to the construction of basements, cellars and projects of that kind where the owner was interested only in having an excavation made of a certain definite size and depth and would be benefited only by an excavation of a certain depth and size with vertical walls. In this case that situation did not exist, as it is undisputed that it was the intention of Truax to continue to strip more land and expose further areas of coal and mine the same, so that whatever dirt was actually removed in the construction of the first pit, would eventually benefit Truax, that is, there would be as much less dirt to remove in order to expose another area of coal as had been removed from the slopes; and the undisputed evidence in this case is to the effect the defendant has subsequently removed all the dirt in the slopes and exposed and mined the coal lying beneath such slopes, so he has directly received the benefit of the labor expended by the plaintiffs in the construction of the slopes. The evidence shows that the defendant was present practically every day during the time the excavation was made; that the contract was made by him with the plaintiffs, knowing that the plaintiffs had never had any experience in stripping coal mines and that, as he says, they were "dirt men," and not coal men, and that they possessed a certain outfit with which it would be difficult, if not impossible, to safely make an excavation with vertical walls. We think that a preponderance of the evidence fairly construed shows that the plaintiffs made the excavation substantially in the manner which the parties must have had in mind that it should be made when they entered into their contract. In other words, we agree with the trial court that "all the dirt removed by the plaintiffs was done for the purpose of uncovering the coal and came within the contract."

There is little or no dispute as to the amount of dirt actually removed by the plaintiffs or as to the amount of coal mined and loaded by them. The trial court found that "pursuant to the contract, the

plaintiffs between May 9th and October 26, 1920, excavated and actually removed 154,156.2 yards of dirt in the process of uncovering the coal, which at the stipulated price of 42 cents per cubic yard amounts to $64,745.60." And "that between October 14, 1920 and January 10, 1921, pursuant to contract with defendant Truax, the plaintiffs loaded on board cars pursuant to such contract 22,797 tons of coal at said mine at the stipulated contract price of 55 cents per ton, amounting to $12,538.35." After a careful review of all the evidence we are of the opinion that these findings should not be disturbed.

It is contended by the appellant that the contract for the stripping and the mining and loading of the coal was entire and not severable; that inasmuch as plaintiffs failed to mine and load the amount of coal provided in the contract there was no substantial performance, but rather an abandonment of the contract by the plaintiffs, and that, hence, they are not entitled to recover. These contentions rest largely upon the premise that the plaintiffs were not entitled to any compensation for the dirt removed from the slopes. The evidence shows that some controversy had arisen between the parties as regards the amount due to the plaintiffs. A conference was had on or about December 20th, 1920, at which this matter was discussed. There is conflict in the evidence as to what was said at that time and as to the agreement then reached as to the amount, if any, owing to the plaintiffs. There is evidence to the effect that at such conference the defendant Truax rendered a statement showing that he was indebted to the plaintiffs in the sum in excess of $6,000. There is evidence, however, on the part of the defendant Truax tending to explain the statement and to deny that he was indebted to them in any such amount at that time. It is undisputed, however, that on the day the plaintiffs ceased to mine and load coal, or the day prior thereto, the defendant Truax rendered them a statement showing that the plaintiffs were indebted to him in an amount in excess of $2,000. The trial court in this case found that the defendant Truax is indebted to the plaintiffs in the sum of $6,807-.05, with interest from January 11th, 1921 (and this indebtedness is exclusive of certain payments aggregating some $4,500 and over made by the defendant Truax upon the steam shovel subsequent to January 11th, 1921). The trial court specifically found that the "defendant wilfully neglected and refused to comply with the provisions of said

contract to be kept and performed by him, in that he refused to make payments due and owing to plaintiffs thereunder and he also refused to furnish them with a statement of his account with these plaintiffs, although they repeatedly requested such statement. That by reason of defendant's refusal to make payments due those plaintiffs under the contract, they were compelled on or about January 11th, 1921 to abandon such work for lack of funds and cease operations under such contract." In our opinion this finding is in accord with the evidence, and is, we think, virtually decisive of the contentions advanced by the appellant. For, inasmuch as the appellant was, himself, responsible for plaintiffs' inability and failure to perform, performance on the part of the plaintiffs was excused. 6 R. C. L. p. 1012. By the express terms of the contract the consideration therein was severable (13 C. J. pp. 563 et seq.), and we see no reason why under the facts here, plaintiffs may not recover according to the terms stipulated in the contract for the services performed by them thereunder.

Certain counterclaims were interposed. Some of these were dismissed or withdrawn by the appellant; the remainder were dismissed by the trial court as without merit or not proved. We fully concur in the disposition so made.

Appellant contends that the trial court erred in rendering judgment in favor of the plaintiffs for certain items set forth in paragraph six of the findings, aggregating in all $427.30. These items appeared in a statement prepared by the appellant of the various charges and advances he claimed against the plaintiffs. The question in dispute was whether these constituted valid charges in favor of the appellant and against the plaintiffs. The trial court determined that they were not such charges, and in this determination we concur. The trial court, however, went further and rendered judgment in favor of the plaintiffs for these items. In other words, as appellant's counsel says, plaintiffs were given, "a double credit for $427.30." The judgment must therefore be reduced by deducting therefrom the said sum of $427.30 and interest thereon. And as so modified the judgment is affirmed. The respondents will recover costs on appeal; but appellant is awarded the sum of $25.00 as and for the costs incident to the review of the item on which he prevails.

NUESSLE, BIRDZELL, JOHNSON, and BURKE, JJ., concur.